UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SABRINA COHN, | CASE NO. 2:25-cv-01914-LK |
| Plaintiff, | ORDER DISMISSING |
| v. | COMPLAINT |
| LAKE STEVENS POLICE DEPARTMENT et al., | |
| Defendants. | |

This matter comes before the Court sua sponte. On October 2, 2025, Magistrate Judge Brian A. Tsuchida granted Plaintiff Sabrina Cohn's application to proceed *in forma pauperis* under 28 U.S.C § 1915(a)(1). Dkt. No. 5. The Court now reviews Cohn's complaint under 28 U.S.C. § 1915(e)(2)(B) and determines that it fails to state a claim on which relief may be granted, and therefore must be dismissed.

The Court notes that Cohn has filed four other highly similar complaints in recent months in this District. The complaints contain many identical allegations, name overlapping sets of defendants, and include similar (though not identical) attachments. Two of these other four are

ORDER DISMISSING COMPLAINT - 1

before this Court (*Cohn v. DCYF Monroe et al.*, 2:25-cv-01915-LK, and *Cohn v. Lake Stevens Police Dep't et al.*, 2:26-00245-LK), one is before Judge Jamal Whitehead (*Cohn v. Lake Stevens Sch. Dist. et al.*, 2:25-cv-01916-JNW), and one was before Judge Richard Jones and was voluntarily dismissed by Cohn (*Cohn v. Monroe DCYF et al.*, 2:25-cv-01051-RAJ). Because the complaints involve the same subject matter and therefore should not be maintained as separate actions, and because the complaints in *Cohn v. DCYF Monroe et al.*, 2:25-cv-01915-LK, and *Cohn v. Lake Stevens Police Dep't et al.*, 2:26-00245-LK contain the same deficiencies as this one, the Court will also dismiss with prejudice Cohn's two other complaints before the Court and require her to file any amended complaint in this action. *See* Fed. R. Civ. P 42(a) ("If actions before the court involve a common question of law or fact, the court may . . . consolidate the actions[.]"); *see also Mendoza v. Amalgamated Transit Union Int'l*, 30 F.4th 879, 886 (9th Cir. 2022) (under the doctrine of claim-splitting, plaintiffs "generally have no right to maintain two separate actions involving the same subject matter at the same time in the same court and against the same defendant" (citation modified)); *Granger v. King*, No. 2:25-CV-00811-JNW, 2025 WL 1311344, at *1 (W.D. Wash. May 6, 2025) ("Courts uniformly agree a malicious lawsuit is one that is duplicative of another federal lawsuit involving the same plaintiff and defendant.").

## I.   BACKGROUND

Cohn filed multiple documents as her "complaint" in this case:

1.     a typewritten, notarized document titled "Affidavit of Sabrina Gene Cohn," dated May 15, 2025 and filed on October 3, 2025, which is structured like a complaint, containing a summary of alleged facts, alleged constitutional violations, a "Statement of Harm," and requests for relief, Dkt. No. 6 at 1–4;[1]

---

[1] An exact copy of this document was filed in each of the other four cases. *See* No. 2:25-cv-01051-RAJ, Dkt. No. 1 at 1–4; No. 2:25-cv-01915-LK, Dkt. No. 6 at 1–4; No. 2:25-cv-01916-JNW, Dkt. No. 2 at 1–4; No. 2:26-00245-LK,

ORDER DISMISSING COMPLAINT - 2

2.   a "Standard Tort Claim Form" used to file a tort claim against the State of Washington, which is filled out by hand and includes an allegation of harm caused to Cohn by the Lake Stevens Police Department, *id.* at 5–8;

3.   a completed "Authorization for Release of Protected Health Information (PHI) to the [Washington State] Office of Financial Management (OFM) Risk Management Division," *id.* at 9–10;

4.   a "Vehicle Collison Form," which appears to be an attachment to the Standard Tort Claim Form, containing a handwritten description of Cohn's mental injuries, *id.* at 11–12;

5.   a 1953 letter from the Western Washington Indian Agency to the Commissioner of Indian Affairs disclaiming the existence of the Tulalip Tribes, *id.* at 13–15; and

6.   a document purporting to be a 2014 letter from the U.S. Bureau of Indian Affairs to Cohn confirming Cohn's father's ancestry, *id.* at 16.

It appears that the first document is intended to function as Cohn's complaint. The documents do not refer to one another, so it is impossible to tell what function the other documents are intended to serve.

The complaint describes events relating to custody of Cohn's child, whom Cohn co-parents with the child's father. Dkt. No. 1 at 1. The child was four years old at the time of the events in question. *Id.* In January 2025, an employee of the Early Learning Center of Lake Stevens School District reported concerns about bruises on Cohn's child. *Id.* The next month, the Monroe branch of the Washington State Department of Children, Youth & Families ("DCYF") allegedly issued findings of child abuse or neglect against Cohn "without lawful investigation, due process, or court

---

Dkt. No. 1-1 at 1–4 (redacted).

ORDER DISMISSING COMPLAINT - 3

order." *Id.* According to Cohn, the Monroe DCYF sent "confidential documents regarding [her] family and household" to the Lake Stevens Police Department, resulting in an incident report that included "false[]" claims. *Id.* In March 2025, Cohn attended a Zoom meeting with Child Protective Services ("CPS") caseworkers and teachers during which she alleges she was "denied the opportunity to fully present [her] position or defend [her]self." *Id.* Two days later, a police officer and a CPS worker interviewed Cohn's child without Cohn's "consent or knowledge." *Id.* at 2.

Three days after that—March 31, 2025—Cohn was arrested by Lake Stevens police officers. *Id.* During the arrest, the officers did not allow Cohn to secure her home, "which was left wide open." *Id.* The officers removed Cohn's child from her custody without a court order and allowed CPS to place her with her father. *Id.* A CPS caseworker then encouraged Cohn's child's father to file for an order of protection against her, which he did. *Id.* A different CPS caseworker entered Cohn's home "without a warrant or court order." *Id.* In April 2025, Cohn spoke with a CPS caseworker, who "admitted that that CPS mistakenly believed [Cohn] had full custody and was unaware of [Cohn's] co-parenting arrangement" in January when the bruises were reported, and "question[ed] why [Cohn] was founded [sic] for incidents when [the child] was not in [her] care." *Id.*

In May 2025, the child's father "had an open CPS investigation due to new bruises found on [the child]." *Id.* Cohn spoke with another CPS caseworker who "confirmed that CPS had never obtained a court order or judicial authorization to remove or transfer [the child] from [Cohn's] custody," and that if the father was "founded [sic] on child abuse or neglect, Monroe DCYF [would] be required to hold a meeting to determine whether [the child] [would] be placed in their case or [Cohn's], due to the existing founded [sic] findings against [Cohn]." *Id.* Cohn was "scheduled for a prehearing on July 28, 2025, to challenge these wrongful findings." *Id.*

ORDER DISMISSING COMPLAINT - 4

Cohn asserts that these alleged events violated her constitutional rights. She alleges that the following events violated her Fourth Amendment rights: the searches and seizures "without lawful cause or judicial oversight," the removal of her child "without court order, judicial review, or emergency circumstances," the seizure and disclosure of "private family records," and the interview of her child without Cohn's "consent or knowledge." *Id.* at 2. She also alleges that the following events violated her Fourteenth Amendment rights: removal of her child "without court order or hearing," "[f]alse and retaliatory findings of abuse or neglect," failure to verify custody status before issuing abuse findings, "[d]enial of meaningful participation" in the Zoom meeting, fabrication of official records, disparate treatment and retaliation, the interview of her child without her consent or knowledge, and "[o]ngoing retaliation, false findings, and denial of equal protection." *Id.* at 2–3. Cohn does not explicitly link specific individuals or institutions to specific constitutional violations or specific harms. *Id.* at 2–3. Cohn requests that the Court issue injunctive relief "[o]verturning the CPS findings of abuse and neglect"; "[r]estor[ing] . . . shared custody rights"; "prevent[ing] further unlawful entries or removals"; and requiring "[f]ederal oversight or investigation into the conduct of CPS and Lake Stevens Police." *Id.* at 3. She also requests compensation for "for emotional, physical, and financial harm." *Id.*

## II.  LEGAL STANDARDS

Federal courts are courts of limited jurisdiction, and they "possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). This means that the Court can only hear certain types of cases. *Home Depot U.S.A., Inc. v. Jackson*, 587 U.S. 435, 438 (2019). The typical bases for federal jurisdiction are established where (1) the complaint presents a federal question "arising under the Constitution, laws, or treaties of the United States" or (2) the parties have diverse citizenship (e.g., residents of different states) and the amount in controversy exceeds $75,000. 28 U.S.C. §§ 1331, 1332.

ORDER DISMISSING COMPLAINT - 5

The Court must dismiss an action if it "determines at any time that it lacks subject-matter jurisdiction" over the case. Fed. R. Civ. P. 12(h)(3). In addition, under 28 U.S.C. § 1915(e)(2)(B), the Court must dismiss a plaintiff's complaints if her claims (1) are frivolous or malicious, (2) fail to state a claim upon which relief may be granted, or (3) seek monetary relief from a defendant who is immune from such relief. The party asserting jurisdiction has the burden of establishing it. *See United States v. Orr Water Ditch Co.*, 600 F.3d 1152, 1157 (9th Cir. 2010).

## III.  DISCUSSION

### A.    Jurisdiction

Cohn does not specifically allege a jurisdictional theory of her case, but because she alleges violations of constitutional rights committed by state and local officials, the Court liberally construes her complaint as an action under 42 U.S.C. § 1983, thereby establishing jurisdiction. 28 U.S.C § 1331.

### B.    *Younger* Abstention

The abstention doctrine developed under *Younger v. Harris*, 401 U.S. 37 (1971) and its progeny bars Cohn's claims. Cohn's complaint describes ongoing state proceedings regarding the custody of her child. She requests that the Court issue injunctive relief against state and local entities and officials overturning findings from those entities and permanently restoring her custody rights. Dkt. No. 6 at 3. For the reasons described below, the Court must abstain from exercising jurisdiction and therefore must dismiss Cohn's complaint for failure to state a claim on which relief may be granted.

Although the jurisdictional "domestic relations exception," which "prevent[s] a party from making an end-run around a state-court status determination," does not apply to federal question cases such as this one, *Bailey v. MacFarland*, 5 F.4th 1092, 1095–96 (9th Cir. 2021), federal courts rely on abstention principals to refrain from hearing disputes that would involve adjudicating

ORDER DISMISSING COMPLAINT - 6

domestic matters. *Peterson v. Babbitt*, 708 F.2d 465, 466 (9th Cir. 1983). Specifically, since 1890, "the federal courts have uniformly held that they should not adjudicate cases involving domestic relations, including 'the custody of minors and a fortiori, rights of visitation,'" as "the whole subject of domestic relations and particularly child custody problems is generally considered a state law matter." *Id.* (quoting *Hernstadt v. Hernstadt*, 373 F.2d 316, 317 (2d Cir. 1967)). Under these abstention principles, "federal courts traditionally decline to exercise jurisdiction in domestic relations cases when the core issue involves the status of parent and child or husband and wife." *Coats v. Woods*, 819 F.2d 236, 237 (9th Cir. 1987).

Under *Younger*, federal courts abstain "from granting injunctive or declaratory relief that would interfere with pending state judicial proceedings." *Hirsh v. Justs. of Sup. Ct. of State of Cal.*, 67 F.3d 708, 712 (9th Cir. 1995) (citing *Younger*, 401 U.S. at 40–41). A party seeking to enjoin ongoing state proceedings must demonstrate that there is an applicable exception to the Anti-Injunction Act and an exception to the *Younger* doctrine. *See, e.g.*, *Cook v. Harding*, 190 F. Supp. 3d 921, 934–35 & n.11 (C.D. Cal. 2016) ("[T]he Anti-Injunction Act prevents federal courts from enjoining pending state court litigation unless the case satisfies a specific statutory exception."). One exception to the Anti-Injunction Act is a Section 1983 claim, *id.*, which the Court liberally construes Cohn's complaint to present. However, there is no exception to *Younger* abstention for Section 1983 claims, so the Court must abstain from hearing the case if (1) the state proceeding is ongoing, (2) that proceeding implicates important state interests, (3) that proceeding provides the plaintiff an adequate opportunity to litigate her federal claims, *id.* at 935, and (4) the actions requested of the federal court implicate the policies behind the *Younger* doctrine, *AmerisourceBergen Corp. v. Roden*, 495 F.3d 1143, 1149 (9th Cir. 2007). Analyzed under these four elements, Cohn's complaint does not present an exception to *Younger* abstention, and the Court must therefore abstain from exercising jurisdiction over the case.

ORDER DISMISSING COMPLAINT - 7

First, there is an ongoing state proceeding. For the purposes of *Younger* abstention, the critical question is whether the state proceedings were underway before initiation of the federal action. *Kitchens v. Bowen*, 825 F.2d 1337, 1341 (9th Cir. 1987). The Washington State DCYF proceedings regarding custody of Cohn's child began no later than March 2025, prior to Cohn filing this case, and remain ongoing. Dkt. No. 6 at 2 ("I am scheduled for a prehearing on July 28, 2025, to challenge these wrongful findings.").[2]

Second, Cohn seeks federal intervention into an ongoing state dispute over child custody, which "undoubtedly implicates important state interests." *Burns v. Burns*, No. C20-1352-RAJ, 2021 WL 2156615, at *3 (W.D. Wash. May 27, 2021); *see also Moore v. Sims*, 442 U.S. 415, 435 (1979) ("Family relations are a traditional area of state concern."); *H.C. ex rel. Gordon v. Koppel*, 203 F.3d 610, 613 (9th Cir. 2000) (similar).

"The third prong is satisfied unless state procedural law bars presentation of Plaintiff's federal claims." *Burns*, 2021 WL 2156615, at *3. Federal courts "must assume that state procedures afford an adequate remedy, in the absence of unambiguous authority to the contrary." *Baffert v. Cal. Horse Racing Bd.*, 332 F.3d 613, 619 (9th Cir. 2003). Cohn has not argued that state procedural law bars her claims or that she cannot appeal the state court's decision based on her constitutional concerns. *See generally* Dkt. No. 6; *see also Benshoof*, 2022 WL 4465782, at *3.

And last, for the reasons described above, the policies behind the *Younger* doctrine are implicated by Cohn's request to enjoin state proceedings involving child custody. Specifically, abstention is required to prevent federal interference with a pending civil proceeding "uniquely in furtherance of the state courts' ability to perform their judicial functions." *Sprint Communications,*

---

[2] To the extent any state proceedings are no longer ongoing, the Court notes another limitation on its jurisdiction: the *Rooker–Feldman* doctrine prohibits a federal district court from exercising subject matter jurisdiction over a suit that is a de facto appeal from a state court judgment. *See Benshoof v. Fauci*, No. C22-1281-LK, 2022 WL 4465782, at *4 n.2 (W.D. Wash. Sept. 26, 2022).

ORDER DISMISSING COMPLAINT - 8

*Inc. v. Jacobs*, 571 U.S. 69, 73 (2013); *see also Morancy v. Salomon*, No. 24-12505, 2025 WL 1341957, at *2–4 (11th Cir. May 8, 2025) (*Younger* abstention warranted where pro se litigant used 42 U.S.C. § 1983 to challenge perceived misconduct in an ongoing state family law proceeding and sought a federal injunction to halt or redirect that proceeding), *cert. denied*, No. 25-413, 2025 WL 3507008 (U.S. 2025); *Doe v. Lindell*, No. 22-1666, 2023 WL 196467, at *2–4 (7th Cir. Jan. 17, 2023) (*Younger* abstention was appropriate in a case alleging that the defendants conspired with the state court judge to limit plaintiff's parental rights under 42 U.S.C. §§ 1983 and 1985; "a federal ruling here would inappropriately insert the federal courts into an ongoing state family-court proceeding—an area of law traditionally reserved for the states"); *Silver v. Court of Common Pleas of Allegheny Cnty.*, 802 F. App'x 55, 58–59 (3d Cir. 2020) (*Younger* abstention warranted in constitutional challenge to a gag order issued in a child custody case).

In sum, the state proceedings here are ongoing and are judicial in nature, implicate important state interests (the duty to protect the best interest of children in custody proceedings, *see* Wash. Rev. Code §§ 26.09.002, 26.11.040), and provide an adequate opportunity to raise federal claims. *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982). *Younger* abstention is warranted. *See Burns*, 2021 WL 2156615, at *3 (abstaining from enjoining custody proceedings when "it is clear that this Court's involvement would enjoin state family law proceedings in a way that *Younger* disapproves"); *H.C.*, 203 F.3d at 613 (observing that a Section 1983 action alleging that a state court judge violated plaintiff's due process rights in custody battle is "precisely the type of case suited to *Younger* abstention").

**C.    Leave to Amend**

Rule 15(a)(2) directs district courts to "freely give leave" to amend a pleading "when justice so requires." Fed. R. Civ. P. 15(a)(2). As the language of the rule suggests, the standard for leave to amend is "very liberal." *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946,

ORDER DISMISSING COMPLAINT - 9

951 (9th Cir. 2006). This is because "the underlying purpose of Rule 15" is "to facilitate [a] decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (citation modified). Still, courts can deny leave to amend if amendment would be futile. *Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma County*, 708 F.3d 1109, 1117 (9th Cir. 2013).

In addition to injunctive relief, Cohn also requests unspecified compensation for "emotional, physical, and financial harm." She alleges she suffered loss of liberty "due to unlawful arrest," "inhumane and unsanitary jail conditions," and "invasion of privacy"—presumably due to the alleged "unlawful seizure and disclosure of private family records." Dkt. No. 6 at 3. To the extent Cohn's complaint attempts to allege a claim for damages based on certain defendants' violation of the Fourth Amendment—and to the extent such claim is distinct from her challenge to the outcome of her ongoing custody proceedings—the claim is deficiently pleaded because it does not link specific individuals or events to specific harms. For instance, she alleges her arrest was unlawful but does not claim that the police officers failed to obtain a warrant or otherwise plead facts regarding the alleged unlawfulness, and she alleges that a CPS worker entered her house without a warrant but provides no connection between that event and any harms. *See id.* at 1–3. Any Eighth or Fourteenth Amendment claim likewise fails because Cohn does not even describe the conditions in the jail or why they were unlawful.

While it appears unlikely that any of Cohn's claims can be pleaded independently of her request for the federal courts to intervene in ongoing state custody proceedings, it is not inconceivable. The Court will therefore allow her to amend her complaint specifically with regard to her Fourth Amendment- and Eighth or Fourteenth Amendment-related claims. Any amended complaint should link specific events or individuals to specific harms, and must not seek relief that would require the Court to intervene in ongoing custody proceedings. Her other claims—those

ORDER DISMISSING COMPLAINT - 10

which request injunctive relief regarding those ongoing custody proceedings—are dismissed without leave to amend because they are barred by *Younger*; accordingly, amendment would be futile. *Roshan v. Lawrence*, No. 20-CV-04770-AGT, 2021 WL 151979, at *8 (N.D. Cal. Jan. 18, 2021) (denying leave to amend on futility grounds after concluding that *Younger* barred the suit).

The filing of an amended complaint will supersede all previous complaints, so Cohn should ensure that her amended complaint contains all intended allegations. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992) (noting the "well-established doctrine that an amended pleading supersedes the original pleading"). Any amended complaint must clearly set forth the "who, what, where, when, and why" necessary for the Court and defendants to understand what Cohn is alleging, and against whom. *See* Fed. R. Civ. P. 8(a); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 565 n.10 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). It must also be labeled as a complaint; any exhibits must also de designated as exhibits in accordance with applicable law. *See, e.g.*, Fed. R. Civ. P. 10; LCR 10.

## IV.   CONCLUSION

For the foregoing reasons, the Court DISMISSES Cohn's complaint with leave to amend as described above. Defendants' Motion to Dismiss is DENIED as moot. Dkt. No. 19. If Cohn does not file an amended complaint within 21 days of the date of this Order, the Court will close this case.

Dated this 6th day of April, 2026.

Lauren King
United States District Judge

ORDER DISMISSING COMPLAINT - 11